OPINION *Page 2 
{¶ 1} The delinquent child-appellant, Daniel Ramon ("Ramon") appeals from the January 4, 2007 Judgment of the Court of Common Pleas, Juvenile Division of Defiance County, Ohio, ordering that he be committed to the Ohio Department of Youth Services ("DYS") for institutionalization for a minimum period of six months to a maximum period not to exceed his attainment of the age of twenty-one.
 {¶ 2} This matter stems from events occurring on November 18, 2006 when a 1998 Buick Park Avenue was stolen from the driveway of a home in Defiance, Ohio. On that evening, the Buick was kept in the driveway with the keys in the ignition. Although the owners are unsure when the car was stolen from the driveway, they did notice that the car was missing the next afternoon. Subsequently, the police were contacted and the car reported as stolen.
 {¶ 3} On November 19, 2006 Carol Reid observed two teenage boys and a teenage girl getting into a car parked illegally in a parking lot in a Hicksville, Ohio apartment complex. Parking was crowded in the complex and Reid was going to contact police to have the car removed from the lot. Before Reid could contact the police, the teenagers left in the car. Approximately an hour later, the teenagers returned the car to the apartment complex lot. At this point Reid called police to have the car towed from the lot. *Page 3 
 {¶ 4} Once police responded, Reid advised that the teenage boys driving the car had gone into the home of Matt and Tina Smith. Patrolman Ken Fraley identified the car as the one stolen from the driveway in Defiance. He then went to the Smith's home and Matt Smith came out to move the car. When Smith went to start the car, Patrolman Fraley removed him from the car and advised him he was under arrest because the vehicle was stolen. Smith became visibly upset as he did not know that the car was stolen. Once Patrolman Fraley began to effectuate the arrest, Ruben Benavides, the other teenaged boy observed exiting the car, came running across the street yelling "don't arrest him, I stole the car." Ramon accompanied Benavides to the scene.
 {¶ 5} After Benavides and Ramon were arrested, Patrolman Fraley had the boys identify numerous objects located in the backseat belonging to them, including hoodies, coats, and some CD's. Subsequent inspection of the car revealed that the car was dirty, missing a hubcap, and had some minor damage, all of which had an estimated value of $670.31.
 {¶ 6} On November 30, 2006 a complaint was filed in the Defiance County Court of Common Pleas, Juvenile Division, on the belief that Ramon committed Receiving Stolen Property in violation of R.C. 2913.51
and R.C. 2151.02, a felony of the fourth degree if committed by an adult.
 {¶ 7} On December 12, 2006 Ramon answered "not true" to the complaint during his initial appearance. The matter was set for trial for January 4, 2007. Benavides and *Page 4 
Ramon were tried together at trial. At the conclusion of trial the court found the complaint to be true and immediately proceeded to disposition. Ramon was committed to DYS for a minimum of six months.
 {¶ 8} Ramon now appeals, asserting six assignments of error.
 ASSIGNMENT OF ERROR I THE TRIAL COURT VIOLATED DANIEL R.'S RIGHT TO COUNSEL AND RIGHT TO DUE PROCESS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, OHIO REVISED CODE SECTION 2151.352, JUVENILE RULE 4, AND CRIMINAL RULES 10 AND 44.
 ASSIGNMENT OF ERROR II THE JUVENILE COURT COMMITTED STRUCTURAL ERROR WHEN IT DENIED DANIEL R. HIS RIGHT TO COUNSEL AT HIS ADJUDICATION AND DISPOSITION HEARING IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSITUTION, ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION, OHIO REVISED CODE SECTION 2151.3352 AND JUVENILE RULES 4 AND 29.
 ASSIGNMENT OF ERROR III THE TRIAL COURT COMMITED PLAIN ERROR WHEN IT ALLOWED THE STATE TO INTRODUCE IMPROPER STATEMENTS VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, AND THE OHIO RULES OF EVIDENCE.
 ASSIGNMENT OF ERROR IV THE TRIAL COURT VIOLATED DANIEL R.'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, AND JUV. R. 29(E)(4) WHEN IT ADJUDICATED HIM DELINQUENT OF RECEIVING STOLEN PROPERTY ABSENT PROOF OF *Page 5 EVERY ELEMENT OF THE CHARGE AGAINST HIM BY SUFFICIENT COMPETENT CREDIBLE EVIDENCE.
 ASSIGNMENT OF ERROR V THE TRIAL COURT ERRED WHEN IT DEPRIVED DANIEL R. OF HIS RIGHT TO APPLY FOR DRIVING PRIVILEGES BECAUSE IT WAS WITHOUT AUTHORITY TO IMPOSE SUCH A SANCTION.
 ASSIGNMENT OF ERROR VI THE TRIAL COURT ERRED WHEN IT FAILED TO HOLD A HEARING TO DETERMINE DANIEL R.'S ABILITY TO PAY AND FAILED TO CONSIDER COMMUNITY SERVICE IN LIEU OF FINANCIAL SANCTIONS IN VIOLATION OF R.C. 2152.20.
 {¶ 9} Ramon's first two assignments of error are interrelated and will be consolidated for ease of discussion. Both assignments of error claim Ramon suffered a denial of the right to counsel. R.C. 2151.352 provides:
 A child . . . is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code. If, as an indigent person, a party is unable to employ counsel, the party is entitled to have counsel provided for the person pursuant to Chapter 120 . . . If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person. The court may continue the case to enable a party to obtain counsel, to be represented by the county public defender or the joint county public defender, or to be appointed counsel upon request pursuant to Chapter 120. of the Revised Code. Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them.
 {¶ 10} The Ohio Supreme Court has recognized that a juvenile has the right to the assistance of counsel in juvenile court proceedings involving criminal aspects. In re *Page 6 Anderson (2001), 92 Ohio St.3d 63, 66, 748 N.E.2d 67, 2001-Ohio-131
citing In re Gault (1967), 387 U.S. 1, 31-57, 87 S.Ct. 1428,18 L.Ed.2d 527. Moreover, the Ohio Rules of Juvenile Procedure also provide for a right to counsel in juvenile proceedings. Juvenile Rule 4(A) provides that "[e]very party shall have the right to be represented by counsel[.]"
 {¶ 11} Recently, the Ohio Supreme Court has revisited the issue of a juvenile's right to counsel. In In re C.S. the court noted that "numerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable to delinquency proceedings." In reC.S., ___ Ohio St.3d ___, 2007-Ohio-4919 citing State v. Walls,96 Ohio St.3d 437, 446, 775 N.E.2d 829, 2002-Ohio-5059. The court defines waiver as an "intentional relinquishment or abandonment of a known right," as the Court defined waiver in the adult case State v. Foster,109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856. In re C.S. at ¶ 105. Furthermore, the court notes that "[a]s in cases involving adults, there is a strong presumption against waiver of the constitutional right to counsel." Id. citing Johnson v. Zerbst (1938), 304 U.S. 458, 464,58 S.Ct. 1019, 82 L.Ed.2d 1461.
 {¶ 12} To waive the right to counsel, an effective waiver must be voluntary, knowing, and intelligent. In re C.S. at ¶ 106 citingState v. Gibson (1976), 45 Ohio St.2d 366, 345 N.E.2d 399. Furthermore, the court in In re C.S. noted that a juvenile court has a special duty when a juvenile waives their right to counsel.
 In a juvenile court proceeding in which the judge acts as parens patriae, the judge must scrupulously ensure that the juvenile fully *Page 7 understands, and intentionally and intelligently relinquishes, the right to counsel. * * * In the discharge of that duty, the judge is to engage in a meaningful dialogue with the juvenile. Instead of relying solely on a prescribed formula or script for engaging a juvenile during consideration of the waiver, see Iowa v. Tovar (2004), 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209, the inquisitional approach is more consistent with the juvenile courts' goals, and is best suited to address the myriad factual scenarios that a juvenile judge may face in addressing the question of waiver.
¶ 106-107.
 {¶ 13} To determine if a valid waiver of the right to counsel has occurred the court is to apply a totality-of-the-circumstances test.Id. at ¶ 108. In applying the totality of the circumstances test, a judge is to consider the
 age, intelligence, and education of the juvenile; the juvenile's background and experience generally and in the court system specifically; the presence or absence of the juvenile's parent, guardian, or custodian; the language used by the court in describing the juvenile's emotional stability; and the complexity of the proceedings.
Id.
 {¶ 14} In addition to the application of the totality of the circumstances test to determine whether counsel has been validly waived, the juvenile court must also comply with procedural guidelines addressed in In re C.S.. In determining the appropriate form of a waiver of the right to counsel, the court specified that where a juvenile is charged with a serious offense, the waiver of the right to counsel must be made in open court, recorded, and in writing. Id. at ¶ 109. This requirement is analogous to the requirement for adult offenders charged with a serious offense. State v. Brooke, 113 Ohio St.3d 199, *Page 8 863 N.E.2d 1024, 2007-Ohio-1533 (The Brooke Court defined a serious offense as one where the penalty includes confinement of more than six months. The court also required that the written waiver be filed with the trial court).
 {¶ 15} While the C.S. Court noted that a parent can be helpful to a juvenile attempting to understand a written waiver, the court also cautioned juvenile courts to be mindful that not all parents may be able to assist a juvenile in waiving the right to counsel.[1]In reC.S. at ¶ 110. The court also acknowledged in In re C.S. that a parent cannot waive a juvenile's right to counsel on their behalf. Moreover, if a conflict exists between parent and child concerning the retention of counsel, counsel must be appointed if requested by the juvenile. In reC.S. at ¶ 100. Parental presence alone cannot be considered to contribute to a valid waiver. However, a juvenile court must be mindful of parental interests, as well as a parent's abilities to assist their children.
 {¶ 16} In addition to the execution of a valid waiver in form, prior to the commencement of an adjudicatory hearing, the juvenile court must also comply with the requirements of Juv. R. 29. This Court has recognized that
 upon the commencement of an adjudicatory hearing against a juvenile, Juv.R. 29(B) requires the court to do the following: *Page 9 
 (1) Ascertain whether notice requirements have been complied with and, if not, whether the affected parties waive compliance;
 (2) Inform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing, including the possibility that the cause may be transferred to the appropriate adult court under Juv.R. 30 where the complaint alleges that a child fifteen years of age or over is delinquent by conduct that would constitute a felony if committed by an adult;
 (3) Inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel;
 (4) Appoint counsel for any unrepresented party under Juv.R. 4(A) who does not waive the right to counsel;
 (5) Inform any unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings, to remain silent, to offer evidence, to cross examine witnesses, and upon request, to have a record of all proceedings made, at public expense if indigent.
In re Kimble, 114 Ohio App.3d 136, 139-140, 682 N.E.2d 1066. The Ohio Supreme Court confirmed this application of Juv. R. 29. In re C.S.
at ¶ 111.
 {¶ 17} In Kimble this Court further recognized that "[t]his rights dialogue is mandatory, and failure to advise the child of these constitutionally afforded protections constitutes reversible error."In re Kimble, supra, at 140 citing In re Smith (1991), 77 Ohio App.3d 1,601 N.E.2d 45. The C.S. court adopted the position of many appellate districts holding that "[w]hile the failure to inform a juvenile of her rights under Juv. R. 29(B) constitutes reversible error, this court has required only substantial compliance *Page 10 
with the rule." In re C.S. at ¶ 112 citing In re Bays, Green App. Nos. 2002-CA-52 and 20020-CA-56, 2003-Ohio-1256.
 {¶ 18} In the present case, the trial court conducted a brief conversation with Ramon concerning his right to counsel at Ramon's initial appearance on the delinquency complaint:
 Court: . . . Whenever you come to Court, you have the right to have an attorney with you if you wish. You may proceed without if you wish, you may speak for yourself. Your father, or course may speak for you, any other adult you choose may speak for you. Do you understand that?
 Ramon: Yes, sir.
 Court: If you would like time to consult with an attorney before we proceed, this can be postponed a week or so to give you whatever time you need to speak to whomever you wish. Do you understand that?
 Ramon: Yes, sir.
 Court: If you would like to be represented by counsel and you and your folks are unemployed and unable to afford an attorney, I'll appoint one to represent you at county expense. Do you understand that?
 Ramon: Yes, sir.
 Court: Have you received a copy of this complaint?
 Ramon: Yes, sir.
 Court: Have you had an opportunity to discuss it with your folks?
 Ramon: Yes, sir.
 Court: Do you wish to be represented by counsel or do you want to proceed today?
 Ramon: Proceed today, sir.
 Court: Dad, is that alright with you?
 [Dad]: Yes, sir.
(Dec. 12 Tr.p. 2-3). *Page 11 
 {¶ 19} At the adjudicatory hearing, held January 4, 2007, the brief dialogue between Ramon and the juvenile court judge contained only an affirmation that Ramon wished to proceed without the assistance of counsel.
 Court: . . .When we were here the last time, you guys elected to go ahead without counsel and I did tell you about subpoena's at that point, right? Okay, you ready to proceed?
 Ramon: Yes, sir.
 {¶ 20} In its brief, the State contends that Ramon was aware of his rights, because he had been in front of the juvenile court numerous times before the current charge. The State also alleges that it was common knowledge that Ramon's parents would have had the funds to hire counsel if they had so desired. However, the Ohio Supreme Court specifically noted in In re C.S. that previous dealings with the juvenile court are not sufficient to show that a parent is in the position to render meaningful advice on the waiver of counsel. Further, as previously noted, affluence of the parent does not prevent a juvenile from qualifying as indigent to have the court appoint counsel. In the present case, the juvenile court represented to Ramon that counsel could only be appointed if his parents were unemployed, not based solely upon Ramon's own indigence.
 {¶ 21} We also note that the juvenile court failed to inform Ramon of his rights under Juv. R. 29(B)(5). For example, Ramon was not informed of his rights "to remain silent, to offer evidence, to cross examine witnesses, and upon request, to have a record of all proceedings made, at public expense if indigent." *Page 12 
 {¶ 22} In sum, we cannot assure that Ramon's waiver was knowing intelligent and voluntary. For example, at the initial appearance, the State requested that Ramon be tried along with a co-defendant who may have actually stolen the car. The trial court never explained to Ramon how an attorney might be helpful in crafting a successful defense, or in advising Ramon of the disadvantages of being tried with a co-defendant. Moreover, the trial court failed to inquire into whether Ramon understood and intelligently relinquished his right to counsel. Instead the trial court immediately accepted Ramon's cursory waiver of his right to counsel.
 {¶ 23} Other courts have held, with respect to waiver of counsel, that "[t]o discharge this duty properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand." In re Bays, supra, at ¶ 11 citing Gibson, supra, at 377, 345 N.E.2d 399. Moreover, "[t]o be valid such a waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and other circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." In re Bays, supra, at ¶ 11 citingGibson, supra, at 377, 345 N.E.2d 399 quoting Von Moltke v. Gillies
(1948), 332 U.S. 708, 723, 68 S.Ct. 316, 92 L.Ed. 309. In the present case, the dialogue between the juvenile court and Ramon did not thoroughly address or investigate any of the factors necessary to *Page 13 
determine whether Ramon knowingly, intelligently and voluntarily waived his right to counsel. Finally, we note that even if the waiver in this case was not defective in substance, the Ohio Supreme Court now requires such waivers to be made in writing which was not done in this case.In re C.S., supra, at ¶ 109. For all of these reasons we must conclude that Ramon's waiver of counsel was deficient. Accordingly, Ramon's first and second assignments of error are sustained.
 {¶ 24} Because we are sustaining Ramon's first and second assignments of error, the judgment of the trial court will be reversed and remanded. As a result, Ramon's remaining assignments of error are rendered moot. Based on the foregoing, the judgment of the Common Pleas Court, Juvenile Division, of Defiance County, Ohio is reversed and remanded for proceedings consistent with this opinion.
Judgment reversed and cause remanded.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] This Court further recognizes that Ohio Admin. Code 120-1-03(D) determines a child's indigence independently from the affluence of the parent, providing:
 [i]n determining eligibility of a child for court-appointed counsel in juvenile court, only the child's income shall initially be considered. The court is encouraged to order parents who are not indigent to pay for the necessary costs of representation for the child in delinquency, unruly, and traffic cases. In no case shall a child be denied appointed counsel because a parent refuses to disclose their financial information or to participate in a reimbursement, recoupment, contribution, or partial payment program. *Page 1