[Cite as *In re I.R.M.*, 2025-Ohio-4900.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

In the Matter of I.R.M.             :          Case No.     25CA28

                                    :          <u>DECISION AND</u>
                                               <u>JUDGMENT ENTRY</u>

                                    :          **RELEASED 10/17/2025**

_____

<u>APPEARANCES</u>:

Richard D. Hixson, Zanesville, Ohio, for appellant.

Kelsey R. Riffle, Washington County Assistant Prosecutor, Marietta, Ohio, for appellee.
_____

Hess, J.

{¶1}    I.R.M. appeals the judgment of the Washington County Court of Common Pleas, Juvenile Division, committing her to the temporary custody of the Washington County Juvenile Center ("Center") for completion of a rehabilitation program. I.R.M. asserts three assignments of error: (1) the trial court erred by accepting her admission at the adjudicatory hearing because she did not validly waive her right to counsel; (2) the trial court violated I.R.M's legal rights to counsel and due process when it proceeded with the dispositional hearing without a parent, guardian, custodian, or appointed counsel present because I.R.M. was unable to validly waive her right to counsel at the dispositional hearing; and (3) the trial court abused its discretion when it committed I.R.M. to the temporary custody of the Center for a minimum six-month period.

{¶2}    We find that under the totality of the circumstances I.R.M. did not validly waive her right to counsel. We sustain her first assignment of error and find her remaining

assignments of error moot. We reverse the juvenile court's judgment and remand this cause for further proceedings as explained more fully below.

## I.  FACTS AND PROCEDURAL HISTORY

**{¶3}**    On February 19, 2025, the State filed a complaint alleging that I.R.M., a 14-year-old, did knowingly cause or attempt to cause physical harm to another, which would constitute an assault under R.C. 2903.13(A) and (C)(1), a first-degree misdemeanor, had the offense been committed by an adult. The police report stated that I.R.M. punched the victim in the head and back area approximately 13 to 15 times at the Marietta High School. The cause of the fight was "name calling on social media."

**{¶4}**    At a hearing held March 19, 2025, I.R.M. and her mother appeared and both waived their rights to counsel. However, it appears from the record that both I.R.M. and her mother did not give audible responses when the trial court asked them if they would like counsel.[1] During this colloquy, the trial court states for the record that both were waiving right to counsel and gave them a waiver form, which both completed.

> Court:  You do have the right, both of you, to have a lawyer represent you. If either of you want a lawyer and you qualify financially, then I would appoint one for you, okay? So I guess the first question for the two of you, do you wish to have a lawyer? Do you want a lawyer for her, or do you want a lawyer, ma'am?
>
> I.R.M.:  (No audible response)
> Mother: (No audible response)
>
> Court: Neither of you?
>
> I.R.M.:  (No audible response)
> Mother: (No audible response)

---

[1] The transcript contains at least ten instances of "inaudible response" notations for I.R.M., mother, the victim, and her mother, combined. I.R.M. does not give an audible response until the second half of the hearing at which she audibly admits to the charges.

> Court: Okay. Then I'll ask you to sign a waiver. That says you're waiving the right to have a lawyer.
>
> (Pause)
>
> Court: Okay. So show both Mother and child waiving their right to a lawyer.

I.R.M. then admits to the allegations in the complaint and the juvenile court engages in a colloquy of the rights she was waiving by admitting and ensures that I.R.M.'s waiver was knowingly and intelligently made. The trial court entered a judgment adjudicating I.R.M. delinquent and ordered a psychological evaluation and set a dispositional hearing for April 24, 2025.

**{¶5}**   The dispositional hearing was held as scheduled. I.R.M. and her grandmother attended. The juvenile court acknowledged that the mother was not present because she was ill. The juvenile court asked both I.R.M. and her grandmother if they wanted a continuance for mother to be present. Grandmother responded that mother had asked grandmother to come in her place and that they wanted to proceed with the hearing and not have the matter continued. The juvenile court informed I.R.M. of her continuing right to counsel, which she waived. The juvenile court also offered counsel to the grandmother and grandmother waived her right to counsel. Both I.R.M. and the grandmother signed additional waiver of right to counsel forms. The colloquy concerning right to counsel was as follows:

> Court: Now, [I.R.M.], you do have the right to, as I said at the previous hearing, to have a lawyer. Do you wish to have a lawyer before we proceed or are you okay without?
>
> I.R.M: (No audible response)
>
> Grandmother: It's up to you. If you want to – do you want to just get it over with today?

I.R.M.: Yeah.

Grandmother: Okay. No lawyer. She wants to get this done, yes.

Court: Just get it over with today? Okay. All right. We will show the child continuing to waive her right to a lawyer. Have her sign a form again.

(Pause)

Court: Yeah, I guess. Are you going to waive your right, ma'am, to a lawyer?

Grandmother: Yes.

Court: Okay. I don't know if I really need you to sign it, but if you would.

**{¶6}** The victim's mother was present at the dispositional hearing and informed the court that the victim suffered a concussion from the incident and required ongoing medical treatment. Documentation was presented that showed I.R.M. was regularly using marijuana. The grandmother explained that I.R.M.'s father "has been in prison – I know this is no excuse – her Mom is [sic] not really been a Mom for I don't know how long." The grandmother also explained that I.R.M. was living with her now, not with the mother. The juvenile court took a recess to review I.R.M's psychological evaluation and the statements presented at the hearing. After calling the court back into session, the juvenile court committed I.R.M. to the Center, ordered 100 hours of community service, and placed her on probation. The juvenile court explained I.R.M. would not be able to get sufficient counseling services on her own and that the Center provides multiple counselors, on-site, every day.  I.R.M. appealed.

## II.  ASSIGNMENTS OF ERROR

**{¶7}**    I.R.M. presents the following assignments of error:

1.  The trial court erred by accepting an involuntary admission from I.R.M. at the adjudicatory hearing, as I.R.M. did not validly waive her right to counsel.

2. The trial court violated R.C. 2151.352, the Ohio Juvenile Rules of Procedure, and I.R.M.'s right to counsel and due process when it proceeded with the dispositional hearing in the absence of I.R.M.'s parent, guardian, or custodian and without appointing counsel for I.R.M., as I.R.M. was unable to validly waive her right to counsel at the dispositional hearing.

3. The trial court abused its discretion when it committed I.R.M. to the temporary custody of the Washington County Juvenile Center for a minimum six-month period.

### III. LAW AND ANALYSIS

### A. Waiver of Right to Counsel

**{¶8}** I.R.M. contends that the trial court failed to obtain a valid waiver of counsel and accepted an involuntary admission contrary to Juv. R. 29(D). That rule sets forth the initial procedure the trial court must follow to accept an admission in an adjudicatory hearing. The Supreme Court of Ohio explained that "the preferred practice is strict compliance with Juv.R. 29(D) * * * however, * * * if the trial court substantially complies with Juv.R. 29(D) in accepting an admission by a juvenile, the plea will be deemed voluntary absent a showing of prejudice by the juvenile or a showing that the totality of the circumstances does not support a finding of a valid waiver." *In re C.S.*, 2007-Ohio-4919, ¶ 113. Determining whether a court has substantially complied with Juv.R. 29(D) presents us with a legal issue we review de novo. *In re Aldridge*, 2002-Ohio-5988, ¶ 19 (4th Dist.).

**{¶9}** Juveniles have the same functional rights in delinquency hearings as adult defendants do in criminal hearings, including the right to counsel. *In re Gault*, 387 U.S. 1 (1967); Juv.R. 4(A); Juv.R. 29(B); R.C. 2151.352. The right to counsel may be waived if the waiver is voluntary, knowing, and intelligent. *In re C.S.* at ¶ 106. There is a strong presumption against waiver of the constitutional right to counsel. *Id.* at ¶ 105. However,

the Supreme Court of Ohio has explained: "[i]n a delinquency proceeding, a juvenile may waive his constitutional right to counsel, subject to certain standards, if he is counseled and advised by his parent, custodian, or guardian. If the juvenile is not counseled by his parent, guardian, or custodian and has not consulted with an attorney, he may not waive his right to counsel." *In re C.S.* at paragraph two of the syllabus.

**{¶10}** Courts must use a totality-of-the-circumstances test to decide whether a juvenile validly waived his right to counsel. *Id*. at ¶ 108. "The judge must consider a number of factors and circumstances, including the age, intelligence, and education of the juvenile; the juvenile's background and experience generally and in the court system specifically; the presence or absence of the juvenile's parent, guardian, or custodian; the language used by the court in describing the juvenile's rights; the juvenile's conduct; the juvenile's emotional stability; and the complexity of the proceedings." *Id*. "If a written waiver has been executed, the juvenile court judge must consider the form used and the juvenile's literacy level to ensure that the juvenile has an intelligent understanding of the document and an appreciation of the gravity of signing it." *Id.* at ¶ 109. If there is a conflict between the juvenile and his parent, custodian, or guardian on the question of whether counsel should be waived, a judge must appoint a counsel for the juvenile. *Id.* at 100.

**{¶11}** Juv.R. 29 "serves as a meaningful guidepost by which the juvenile courts' judges must determine whether the due process rights from which the right to counsel arises have been satisfied in a given case." *Id*. at ¶ 115. Specifically, Juv.R. 29(B)(3) requires the trial court, at the beginning of an adjudicatory hearing, to "[i]nform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel[.] " Juv.R. 29(B)(5) further obligates the court to "[i]nform any

unrepresented party who waives the right to counsel of the right: to obtain counsel at any stage of the proceedings * * *."

> We hold that in a juvenile delinquency case, the preferred practice is strict compliance with Juv.R. 29(D). We further hold, however, that if the trial court substantially complies with Juv.R. 29(D) in accepting an admission by a juvenile, the plea will be deemed voluntary absent a showing of prejudice by the juvenile or a showing that the totality of the circumstances does not support a finding of a valid waiver. For purposes of juvenile delinquency proceedings, substantial compliance means that in the totality of the circumstances, the juvenile subjectively understood the implications of his plea.

*In re C.S.* at ¶ 113; *In re J.C.*, 2010-Ohio-1785, ¶ 26-29 (4th Dist.).

**{¶12}** Here both parties agree that the juvenile court did not strictly comply with the requirements of Juv.R. 29(D). However, the State argues that there was substantial compliance because the juvenile court informed both I.R.M. and her mother of their right to counsel and determined that they were waiving that right. The State concedes that the juvenile court did not inform them of their right to obtain counsel at any stage of the proceedings. However, because the juvenile court informed I.R.M at the next stage – the dispositional hearing – that she again had the right to counsel, the State argues that the juvenile court substantially complied with this requirement. Finally, the State acknowledges that, as part of the totality of the circumstances review, we must determine if the record contains sufficient evidence indicating that I.R.M. was advised or counseled by her mother before waiving her right to an attorney. The State argues that the fact that both I.R.M. and her mother signed the waiver forms is sufficient evidence that I.R.M. was counseled by her mother concerning the waiver.

**{¶13}** In *In re J.C.*, 2010-Ohio-1785 (4th Dist.), we found that J.C. validly waived his right to counsel because we found that the record contained sufficient evidence that

he was advised or counseled by his mother before waiving his right to counsel.   The

relevant colloquy went as follows:

> THE COURT: Now, you and your parents are all parties to this action. As such, you and your parents do have the right to be represented by lawyers. You have the right to hire lawyers of your own choosing, however, if you wanted a lawyer but you couldn't afford one, and you qualified under state guidelines, I could appoint a lawyer to represent the child as well as the parents. Now, [J.C.], do you want a lawyer to represent you in this case?
>
> THE JUVENILE: No, sir.
>
> THE COURT: Does the mother want a lawyer?
>
> THE JUVENILE'S MOTHER: No, sir.
>
> THE COURT: Does the father want a lawyer?
>
> THE JUVENILE'S FATHER: No, sir.
>
> THE COURT: And have the parents had an opportunity to discuss this complaint with your child prior to today's hearing?
>
> THE JUVENILE'S MOTHER: Yes, I have.
>
> THE COURT: And you too, sir?
>
> THE JUVENILE'S FATHER: Not really.
>
> THE COURT: But the custodial parent has? The mother has?
>
> THE JUVENILE'S MOTHER: Uh-hum.
>
> THE COURT: And do you agree with his decision then to waive his right to counsel today?
>
> THE JUVENILE'S MOTHER: Yes.
>
> THE COURT: Okay. The probation officer is going to hand the family the waiver of counsel form. Please review it. If you agree that you don't want a lawyer, go ahead and sign it.
>
> (PAUSE)

> THE COURT: I'll note that the family has signed the waiver of counsel form. Now, the right to have a lawyer is a continuing right. So if we would go to another hearing and you change your mind about wanting a lawyer, let the Court know. We'll make sure you have the opportunity to speak with one.

*In re J.C.,* 2010-Ohio-1785, ¶ 4-20 (4th Dist.). We found that there was sufficient evidence of a valid waiver. First, the court informed the parties that they each had a right to an attorney and that if they could not afford one, the court could appoint one for both the child and the parents. The court also informed them that the right to an attorney was a continuing right and the parties could change their mind about an attorney and have one later. Second, the parties each separately verbally stated on the record that they did not want counsel by audibly stating, "No, sir." Third, the court determined that the mother had an opportunity to discuss the case with J.C. before coming to the hearing and that she agreed with his decision to waive his right to counsel. Fourth, the court gave the family the waiver form and asked them to review it together and if they agreed that they do not want a lawyer, to sign it. Fifth, J.C. was 17 years old at the time of the hearing and there was no indication that he was incapable of understanding the charges against him or his rights. Last, there was no indication in the record that his parents had any interest adverse to his own.

**{¶14}** We also acknowledged that the Supreme Court of Ohio in *In re C.S., supra*, requires that a juvenile be "counseled" by parents prior to waiving the right to counsel. In *In re C.S.*, the Supreme Court of Ohio found the following colloquy by the juvenile court to be insufficient because there was no indication that C.S.'s mother gave any meaningful advice to her son.

> THE COURT: Do you understand that you have the right to be represented by an attorney at today's hearing?

C.S.: Yes, sir.

THE COURT: If you cannot afford an attorney and you qualify under state guidelines, I will appoint an attorney to represent you. Do you understand that?

C.S.: Yes, sir.

THE COURT: Do you wish to go forward with today's hearing without an attorney?

C.S.: Yes, sir.

THE COURT: Ms. S., do you agree with C.S.'s decision today to go forward without an attorney?

MS. S.: Yes, sir.

*In re C.S.*, 2007-Ohio-4919, ¶ 11-18.

**{¶15}** We reviewed cases from other districts and discussed how the requirement to be counseled or advised by a parent or guardian has been interpreted. *In re J.C.* at ¶ 30-33. We found that courts have found that the juvenile has not been counseled where a parent was present at the hearing but the parent had not stated that he or she had discussed the complaint with their child prior to the hearing. *See In re J.F.*, 2008-Ohio-4325 (2d Dist.); *In re T.B.*, 2009-Ohio-2551 (2d Dist.); *In re Brandon M.,* 2009-Ohio-6579 (2d Dist.); *In re Bucholtz*, 2008-Ohio-5826, ¶ 17 (3d Dist.) (parents were not present at the hearing and there was no indication in the record that they had counseled him prior to the hearing); *In re C.S.,* 2010-Ohio-867 (7th Dist.) (father was present at hearing but magistrate never made any determination if juvenile had been counseled or advised by father about the right to counsel).

**{¶16}** Perhaps the case with the least sufficient evidence that the child had been counseled by the parent concerning the waiver of right to counsel is *In re Haggard*, 2009-

Ohio-3821 (3rd Dist.). In *In re Haggard*, the appellate court found that the record contained sufficient evidence that the juvenile was counseled. The relevant colloquy was as follows:

> The Court: Now throughout the course of these proceedings, you have the right to have an attorney represent you. If you cannot afford an attorney one can be appointed to represent you at little or no cost to you. Do you understand that?
>
> Jeffrey Haggard: Yes, Sir.
>
> The Court: Do you want to go forward today without an attorney or would you like to have time to talk with an attorney first?
>
> Jeffrey Haggard: I'll go without an attorney, Sir.
>
> The Court: Jeffrey, Ms. Lee is gonna give you a piece of paper which is your written waiver of your right to an attorney. I want you to read it. If you do agree with it, sign it at the bottom where it says "Juvenile" and then give it to your mother for her review and if she agrees then she can sign it as well. (Jeffrey and his mother complying.) Now even though you've signed that Jeffrey, if at any time you change your mind and decide you want an attorney all you have to do is tell me, alright?
>
> Jeffrey Haggard: Yes, Sir.

*Id.* at ¶ 34. The court instructed Jeffrey to read the wavier form, determine if he agreed, sign it if he agreed, and then give it to his mother for her to review to determine if she agreed. The appellate court found that there was sufficient evidence of parental counseling in this interaction:

> [W]e cannot find that he was not counseled by a parent when he decided to waive counsel. Jeffrey's mother was clearly present at the time the waiver was signed and cosigned the waiver, thus providing a clear indication that she agreed that waiving counsel was the correct decision for Jeffrey. Moreover, nothing in the record indicates that either Jeffrey or his mother needed additional time to discuss his waiver or that either objected to waiving counsel.

*Id.* at ¶ 35.

{¶17} Here when we review the totality of the circumstances, we find that I.R.M. did not validly waive her right to counsel because the record does not contain sufficient evidence indicating that she was advised or counseled by her mother before waiving her right to counsel. First, I.R.M. had recently turned 15 years old at the time of the hearing, had never had any charges against her previously, and her appearance at the March 19, 2025 hearing was her first appearance in court. Thus, she was young and had had no previous experience with the legal process or court proceedings. While the juvenile court informed her of her right to counsel, it did not clearly explain that if she "qualified financially" meant that if she could not afford one, the court would appoint one for her.[2] *In re L.A.B.*, 2009-Ohio-354, ¶ 15-18, ¶ 62 (court failed to adequately advise juvenile of his right to counsel when it  when it only told him of his right to an attorney and that one would be appointed for him if he could not afford one, but "gave no specific information about what this right entailed."). The trial court also failed to inform I.R.M. that she had the continuing right to obtain counsel at any stage of the proceeding. Juv.R. 29(B)(5).  The fact that she was told this a month later is not relevant to her understanding at the time of this hearing, a month earlier.

{¶18}  During the colloquy, neither I.R.M. nor her mother ever made any audible response indicating that they were waiving their right to counsel even though the juvenile court repeated the question.  The mother was never asked if she reviewed the complaint or if she discussed it or the right to counsel with I.R.M. prior to the hearing. And even

---

[2] While it may appear obvious that "qualify financially" means showing inadequate income, there are numerous instances where "qualify financially" means showing adequate income, as in qualifying for a car loan or mortgage. We cannot readily ascertain what a 15-year-old juvenile might understand the term means. The better practice would be to use the phrase, "If you cannot afford one, the court can appoint one for you."

though the mother signed the waiver form, there is nothing in the record from which we can infer that I.R.M. conferred with her mother during the signing process. Unlike *In re Haggard, supra*, the mother was not instructed to review the waiver form to determine if she agreed with I.R.M's decision to waive her rights to counsel. Here the court merely instructed, "Okay, then I'll ask you to sign a waiver. That says you're waiving the right to have a lawyer. (Pause) Okay. So show both Mother and child waiving their right to a lawyer." This record of the waiver-signing process provides no evidence that I.R.M. was counseled by her mother during it.

{¶19} In *In re J.C.* we provided guidance to juvenile courts so that we can readily determine from the record whether sufficient parental counseling occurred:

> "[C]learly the better approach is to specifically ask the parent if the parent has discussed the waiver of counsel with the child. If the answer is "yes," that is sufficient. If the response is "no," the court would simply instruct the parent to do so "now."

*In re J.C.*, 2010-Ohio-1785, ¶ 37, fn. 1. Here, given the juvenile court's unclear and incomplete advisement on the right to counsel, the multiple inaudible responses by both I.R.M. and the mother when asked of their intentions concerning waiver, and the complete lack of evidence that mother advised or counseled I.R.M. on her right to counsel before waiving it, we find that I.R.M. did not validly waiver her right to counsel.

{¶20} We sustain the first assignment of error. Because we find that I.R.M. did not waive her right to counsel at the adjudication hearing, I.R.M.'s admissions were not voluntary and the judgment adjudicating her delinquent is reversed. Based on our decision sustaining her first assignment of error, her remaining assignments of error concerning the dispositional hearing and the subsequent commitment order are moot.

## IV. CONCLUSION

{¶21} We hold that under the totality of the circumstances I.R.M. did not validly waive her right to counsel. We sustain her first assignment of error. Her remaining assignments of error are moot. We reverse the juvenile court's judgment and remand this cause for further proceedings. The trial court should hold a new adjudicatory hearing, inform I.R.M. of her right to counsel in accordance with the applicable law, and, if I.R.M. decides to waive her right to counsel, determine if she has been counseled by her parents, guardian, or custodian concerning that waiver.

JUDGMENT REVERSED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED and that appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
          Michael D. Hess, Judge




## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**